**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
FLORIDA**

**Tallahassee Division**

| | |
|---|---|
| NEW FLORIDA MAJORITY EDUCATION FUND, COMMON CAUSE and MI FAMILIA VOTA EDUCATION FUND, | |
| Plaintiffs, | Civil Action No. 4:18-cv-00466 MW-CAS |
| v. | |
| KEN DETZNER, in his official capacity as Secretary of State of the State of Florida, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

### I.     INTRODUCTION

Plaintiffs seek emergency relief from this Court to remedy a serious, and otherwise irreparable, injury: the loss of the right to vote. The facts are undisputed. Hurricane Michael is bearing down on Florida's gulf coast and Panhandle and was reported to be a category 4 hurricane and possibly the worst storm to hit the region in a century.[1] Governor Rick Scott issued a declaration of emergency for 35 of Florida's 67 counties. Numerous mandatory and voluntary evacuation orders have been issued with Governor Scott and other officials pleading with

---

[1] *See* https://www.tallahassee.com/story/news/2018/10/10/hurricane-michael-live-updates-category-4-landfall-florida-storm-surge/1587230002/.

1

Floridians to heed these evacuation orders and to prioritize taking precautions to safeguard themselves and their families in the face of this storm.

Throughout the final day of voter registration (October 9, 2018), when Defendant Detzner was apparently taking the position that Floridians, including those in the path of this historic storm, had ample opportunities to register to vote in person at their county supervisor of elections offices if they remained open or could use the state's online voter registration system (OVR), Governor Scott was posting a series of tweets on Twitter, warning Floridians of the growing intensity of Hurricane Michael and pleading with residents in the hurricane's path to evacuate and take precautions to protect themselves and their loved ones from the deadly consequences of the storm:

"**Rick Scott**Verified account **@FLGovScott**

I understand that evacuations are inconvenient, but this storm will bring torrential rain and heavy wind, along with dangerous storm surge throughout the panhandle. If you have been told to leave, you need to go. It could be the difference between life & death.

11:37 AM - 9 Oct 2018

**Rick Scott**Verified account **@FLGovScott**

I can not emphasize enough. Hurricane Michael is forecast to be the most destructive storm to hit the FL panhandle in decades. It will be life-threatening and extremely dangerous. You cannot hide from this storm. You can rebuild your home, you cannot rebuild your life.

12:48 PM - 9 Oct 2018

**Rick Scott**Verified account **@FLGovScott**

Hurricane Michael will be here TONIGHT. This is your LAST CHANCE to get prepared for this monstrous and deadly storm. The state is not taking this storm lightly and neither should any family.

3:31 PM - 9 Oct 2018

**Rick Scott**Verified account **@FLGovScott**

Let me be clear- the storm surge that our coastal counties are facing is deadly. DO NOT ignore warnings from local officials- this storm could kill you. We can rebuild your house, we cannot rebuild your life. If you have evacuation orders, LEAVE NOW.

7:54 PM - 9 Oct 2018

**Rick Scott**Verified account **@FLGovScott**

If you're in an evacuation zone, I am urging you to leave RIGHT NOW. Do not risk your life or the lives of your loved ones- get out now.

9:41 PM - 9 Oct 2018

**Rick Scott**Verified account **@FLGovScott**

Tonight the **@NHC_Atlantic** forecasted that Hurricane Michael will be a Category 4 storm when it makes landfall. Just as we've said over & over, this storm is DEADLY and could be catastrophic to the FL Panhandle.

11:16 PM - 9 Oct 2018

**Rick Scott**Verified account **@FLGovScott**

Families under mandatory evacuation in the Panhandle and Big Bend need to move inland RIGHT NOW. The decisions you & your family make over the coming hours could be the difference between life & death.

11:32 PM - 9 Oct 2018"

At the same time when millions of Floridians were heeding the Governor's directives and taking precautions to protect themselves and their families as this dangerous storm continued to intensify during the final days of leading up to the book closing for voter registration, Floridians reported experiencing problems using the State's online voter registration system (OVR), compounding the burdens faced by eligible Floridians who were attempting to complete their voter registration applications or update their information by the October 9, 2018 deadline.

In fact, it was reported in the Palm Beach Post that Susan Bucher, the Election Supervisor for Palm Beach County, made a request for an extension of the voter registration deadline because

3

of problems with the State's online voter registration system.[2]  According to the report dated October 9, 2018, Supervisor Bucher said that she had requested an extension of the voter registration deadline because the OVR system had technical issues which she suspects prevented potential voters from registering online. *Id*. The Palm Beach Post also reported that Ms. Bucher said the OVR system appears to have been down over the weekend and was working "intermittent" on Tuesday (October 9, 2018, the same day as the voter registration book closing). As a result, the Palm Beach Post reported that Ms. Bucher requested that the Division of Elections extend the voter registration deadline, but she received no answer to her request. *Id*.

Despite the fact that voter registration deadlines were recently extended in South Carolina and North Carolina in the wake of Hurricane Florence,[3] Defendant Ken Detzner refused to provide any reasonable or adequate relief for eligible Floridians who have been prevented from meeting the October 9, 2018 voter registration deadline as a result of the disruptions caused by Hurricane Michael and reported problems with the state's online voter registration system in the final days of the voter registration period.  Instead, Defendant Detzner issued Directive 2018-03, which fails to provide any adequate or meaningful relief for Floridians who will be forced to evacuate from their home counties, have no idea when or if they will be able to return home and have no access to the state's OVR system due to the circumstances presented by the hurricane or because they do not have the required state issued driver license or ID card to use the OVR system and must submit a hardcopy registration application.

---

[2] *See,* https://www.mypalmbeachpost.com/news/local/bucher-cites-website-glitches-bid-for-voter-registration-extension/iszElEW5I6it4NTriPAe3N/.
[3] *See*, https://www.scvotes.org/ (South Carolina State-Wide Extension through October 17, 2018) and https://www.ncsbe.gov/index.html (North Carolina Extension through 5:00 p.m. on October 15, 2018 for 28 Counties).

The relief requested is not unprecedented. Indeed, a district court judge in Florida granted relief under similar circumstances due to Hurricane Matthew in 2016. *See* Order Granting Temporary Restraining Order, ECF No. 15, *Fla. Dem. Party v. Scott*, No. 4:16-cv-626-MW/CAS 9N.D. Fla. Oct. 10, 2016), and Order Granting Preliminary Injunction, *id.*, ECF 29 (Oct. 12, 2016). In that case, the court extended the time for registration from October 11 through October 18. In addition, a District Court Judge in the Eastern District of Virginia granted an emergency motion to extend the voter registration deadline statewide when the State's online voter registration system experienced problems in the final days of the voter registration period ahead of the 2016 general election.[4]

The constitutionally guaranteed right to vote cannot be abridged without adequate justification, and there is no legitimate State interest that outweighs the burden on plaintiffs' rights occasioned by the refusal of Defendant Detzner to allow additional time for registration under the circumstances presented here.

For the reasons set forth below, Plaintiffs respectfully ask this Court to order a one week extension of the registration book closing through 11:59 p.m. on October 16, 2018, without prejudice to further extensions in the event that the impact of Hurricane Michael on Florida justifies a further extension.

**II.   STATEMENT OF FACTS**

On October 7, 2018, Governor Rick Scott declared a State of Emergency in twenty-six counties as a result of the threat caused by then-Tropical Storm Michael.[5] Governor Scott amended that Executive Order to include nine more counties the next day. On October 8,

---

[4] *See, New Virginia Majority Education Fund, et al. v Virginia Department of Elections, et al.*, Civil Action No. 1:16-cv-01319, Doc. 10, (E.D. VA. 2016).
[5] Fla. Exec. Order No. 18-277 (Oct. 7, 2018), https://www.flgov.com/wp-content/uploads/2018/10/SLT-BIZHUB18100810270.pdf.

5

2018, FEMA issued a pre-landfall emergency declaration for all thirty-five counties under Gov. Scott's State of Emergency.[6] Over 5.6 million people live in these thirty-five counties,[7] including nearly 3.7 million registered voters, 28.2% of all the registered voters in the state.[8]

As of 5 p.m., Tuesday, October 9, 2018, Hurricane Michael was a Category 3 storm with "[s]ome additional strengthening [] expected."[9] In a press conference to warn Floridians about the coming storm, Governor Scott called Hurricane Michael "devastating and deadly" and "not [to] take a chance" by remaining in areas with heavy storm surge because the "storm will be life-threatening."[10] The huge evacuation is causing traffic backups as far as Mobile, Alabama, which is "eat[ing] up all the fuel reserves" as residents and vacationers flee the area.[11]  As noted above, throughout the final day of voter registration, Governor Scott posted tweets on Twitter sounding the alarm about the storm's increasing ferocity and the need for Floridians to evacuate and take other precautions to protect themselves and their loved-ones from the deadly consequences of the storm.

---

[6] Federal Emergency Management Agency, Hurricane Michael Emergency Declaration, FEMA-3405-EM, Oct. 8, 2018, https://www.flgov.com/wp-content/uploads/2018/10/SUMMARY-3405-EM.pdf.
[7] U.S. Census Bureau, *Quick Facts*, https://www.census.gov/quickfacts/fact/table/US/PST045217 (last visited Oct. 9, 2018).
[8] Florida Department of State, *Voter Registration – By County and Party*, https://dos.myflorida.com/elections/data-statistics/voter-registration-statistics/voter-registration-monthly-reports/voter-registration-by-county-and-party/ (last visited Oct. 9, 2018).
[9] National Hurricane Center, *Hurricane Michael Public Advisory Number 13*, https://www.nhc.noaa.gov/text/refresh/MIATCPAT4+shtml/092054.shtml (last visited October 9, 2018, 5:23 p.m.).
[10] Karl Etters, *Hurricane Michael 'will be life threatening,' Gov. Rick Scott warns*, Florida Today, Oct. 8, 2018, https://www.floridatoday.com/story/weather/2018/10/08/hurricane-michael-life-threatening/1564459002/.
[11] Lawrence Specker, *Hurricane Michael evacuation traffic jamming I-10 Bayway*, Alabama.com, Oct. 9, 2018, https://www.al.com/news/mobile/index.ssf/2018/10/hurricane_michael_evacuation_t.html.

These massive disruptions were occurring during the busiest time for voter registration, namely the last days of the registration period for participation in a general election. Indeed, based on publicly available data, over 53,000 people registered to vote in Florida during the final two days of the registration period for the 2016 general election.[12]

The fact that registration activity is particularly high during this period is well-known to state and local elections officials.  In 2016, Hurricane Matthew made landfall just days before the voter registration deadline. On October 11, 2016, a federal court granted a TRO and extended the voter registration until the following day to hold a hearing.  On October 12, 2016, a federal court ordered the Department of State to extend the voter registration deadline, statewide, to October 18. After a court ordered an additional one-week extension of the statewide deadline to accommodate affected voters, *Democratic Party of Florida v. Detzner*, 215 F.Supp.3d 1250 (N.D.Fl. 2016), over 80,000 additional Floridians were able to register to vote.

Compounding the disruptions caused by the impending hurricane, Floridians attempting to register or update their voter registration information by using the State's online voter registration system (OVR) have reported problems being able to complete the registration process or update their registration data.

To use the OVR system, Florida residents must have a Florida driver's license or state identification card, and must provide the last four digits of their social security number in the OVR system.  Florida residents who do not have a Florida state driver's license or state identification card, or access to the last four digits of their social security number,

---

[12] Florida Department of State, Voter Extract Disk Request, FVRS data, January 2017, *available at*: https://dos.myflorida.com/elections/data-statistics/voter-registration-statistics/voter-extract-disk-request/.

including residents experiencing power outages due to the hurricane, must complete a paper voter registration application, then print, sign, and deliver it by mail or in-person to their county Supervisor of Elections office or other approved voter registration agencies. While the OVR system is not an adequate replacement for access to SOE offices, the problems reported by users of the OVR compounded the burden on eligible Floridians due to Hurricane Michael.

In the months leading up to today's registration deadline, the ACLU, the Lawyers' Committee for Civil Rights Under Law, and other organizations repeatedly warned the Secretary of State's office about problems users reported about the OVR system. Defendant Detzner did not take precautions to alleviate this predicted burden on voters, even though users reported similar issues with the system ahead of the state's 2018 primary elections.

The loss of voter registration opportunities immediately preceding the voter registration deadline in Florida is simply devastating.  Generally speaking, voter interest in an  election increases as the election draws closer, such that the highest rates of voter registration  activity occur during the period immediately prior to the registration deadline for an election. Voters generally rely on the  published deadlines for registration when making plans. During the final two days of the  registration period for the 2016 presidential election, at least over 53,000 people registered to vote in  Florida.

This year, however, the opportunity to register to vote during the last days of  the registration period was largely lost.  Over 2.4 million Floridians live in evacuation zones. Tens of thousands of voters who relied on the State's  published October 9 registration deadline found themselves unable to register during  the last few days of the registration period due to mandatory and voluntary evacuation orders and their decision to heed

warnings to take precautions in advance of the storm likely lost their opportunity to register to vote as a consequence.

On July 26 the ACLU of Florida wrote to State officials expressing its concerns over reports that the OVR website was not allowing Floridians to register or change party or address in the lead up to the deadline to register for the primary election. Exhibit A, Abudu Declaration, Exhibit A-1, ACLU of Florida Letter dated July 26, 2018. The ACLU requested responses to seven questions regarding the pre-primary outages, and any precautions on the part of Defendants to address these concerns before today's registration deadline for the general election.

The Lawyers' Committee for Civil Rights Under Law and Common Cause Florida sent a letter to Brad McVay, the interim general counsel for the Florida Department of State, to request an extension of the voter registration deadline on October 8, 2018. Exhibit B, Houk Declaration and Exhibit B-1, letter from the Lawyers' Committee and Common Cause Florida dated October 8, 2018. No response was received from Mr. McVay or anyone else in the Department of State to that letter. *Id.* In addition, no responses were received from the interim general counsel and assistant general counsel to follow-up calls and voicemails left by the Lawyers' Committee and Common Cause Florida on October 9, 2018. Exhibit B, Houk Declaration.

Instead of making any reasonable effort to accommodate the needs of Floridians who needed to register to vote or update their voter registration in the face of this impending natural disaster and the problems faced by users when they attempted to register or update information online, Defendant Detzner issued Directive 2018-03, pursuant to his authority in section 97.012(16), Florida Statutes (2018), which authorized any Supervisor of Elections

9

whose office that was closed on Tuesday, October 9, 2018, as a result of Hurricane Michael to accept paper voter registration forms on the next day that his or her office is reopened. The Directive also stated that there would be no extension of the October 9, 2018 online voter registration deadline. *See* Exhibit C, Secretary of State Directive 2018-03, dated October 8, 2018.

This woefully inadequate Directive did not provide any relief to Floridians who were forced to leave their home counties ahead of the storm or experienced problems using the State's OVR system. The Directive also provided no relief to Floridians who will be unable to return to their home counties on the exact, single day when the county supervisor of elections reopens the office.

In the aftermath of Hurricane Florence, which made landfall in the Carolinas on September 14, 2018, the voter registration deadline was extended state-wide in South Carolina until October 17, 2018, and for 28 counties hardest hit by the storm in North Carolina until 5:00 p.m. on October 15, 2018.[13] Thus, while Floridians in the path of Hurricane Michael were scrambling in the last days of Florida's voter registration period to evacuate or take other precautions in the face of the quickly intensifying storm, they were expected to register in person by the time their county supervisor of elections' office closed on October 9, 2018 or find a computer and hope they could complete a registration application or update their registrations data without running into problems that had been reported by other users. At the same time, residents of South and North Carolina still had time to complete the voter registration process in those states because of the extensions

---

[13] *See*, https://www.scvotes.org/ (South Carolina State-Wide Extension through October 17, 2018) and https://www.ncsbe.gov/index.html (North Carolina Extension through 5:00 p.m. on October 15, 2018 for 28 Counties).

ordered there. Neither Defendant Detzner, nor Governor Scott, have identified any compelling state interest in Florida that would justify denying eligible Floridians a reasonable extension of the voter registration deadline under the circumstances presented by Hurricane Michael and the issues reported by users of the OVR system.

In so doing, the State is ensuring that eligible Floridians who could not register by October 9, 2018 due to the impending hurricane or because of problems using the OVR system in the waning days of the registration period will be unable to participate in the November election.

## III. ARGUMENT

### A. The Standard for Issuing a Preliminary Injunction

The Court may grant a preliminary injunction upon a showing by the moving party that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). Although a preliminary injunction is an extraordinary and drastic remedy, it nonetheless should be granted if "the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir. 1983)(quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).

### B. Plaintiffs are Likely to Succeed on the Merits of their Claims

#### 1. Defendants' Refusal to Extend the Voter Registration Deadline Imposes A Severe Burden on the Right to Vote without Advancing any State Interest

The right to vote "is of the most fundamental significance under our constitutional structure." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (citation omitted); *see also Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. . . Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right." *Wesberry v. Sanders*, 376 U.S. 1, 17–18 (1964).[14] Accordingly, the courts have developed a balancing test to prevent the unjustified burdening of the right to vote—a test that the Defendants' refusal to extend the voter registration deadline fails on both ends of the scale.

*The Anderson-Burdick Test*

A State may not place any burdens on the right to vote that are not adequately justified by the State's asserted interests. *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992). When considering challenges to state election laws that burden the fundamental right to vote, courts must "weigh 'the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789); *see also Obama for Am. v. Husted*, 697 F.3d 423, 433 (6th Cir. 2012).

---

[14] The right to vote includes the right to register. *See United States v. McLeod*, 385 F.2d 734, 740 (5th Cir. 1967).

12

The *Anderson-Burdick* framework is a "flexible" sliding scale, in which the "rigorousness of [the court's] inquiry" increases with the severity of the burden. *Burdick*, 504 U.S. at 434. When a state imposes a severe burden, strict scrutiny applies and any burdensome action must be narrowly tailored to advance a compelling state interest. *See id.*

The Defendants' refusal to extend the voter registration deadline in the face of Governor Scott's emergency declarations, mandatory and voluntary evacuation orders and the pleas by government officials that residents heed these evacuation orders and prioritize taking safety precautions, will completely disenfranchise eligible Florida citizens from being able to vote in the November 6, 2018 general election. Given the number of Floridians impacted by the evacuation orders, the decision not to extend registration will disenfranchise innumerable citizens. Because the burden imposed is severe, Defendants' actions must be narrowly tailored to advance a compelling state interest. *See Burdick*, 504 U.S. at 434. But even if the burdens imposed on eligible applicants were considered less than severe, it would not relieve the State of the obligation to offer a justification that outweighs those burdens. *See id.* (courts must evaluate "the extent to which [state] interests make it necessary to burden the plaintiffs' rights") (citation omitted). The refusal to extend the deadline in the wake of Hurricane Michael is so arbitrary and so unnecessary to advance any state interest that it would not pass the *Anderson-Burdick* test, even under the most lenient scrutiny.

The Florida Secretary of State has not offered any reasonable explanation for his refusal to issue an extension of the voter registration deadline for the benefit of voters who are facing hardships in advance of the hurricane making landfall. Instead, Defendant Detzner issued an order that depends entirely upon whether a county supervisor of elections' office was closed on October 9th – even if Floridians heeded the advice of the Governor and other officials to evacuate

or took other precautions for the safety and security of themselves or family members that prevented them from registering to vote on October 9, 2018.

Moreover, Defendant Detzner's decision not to make any accommodation to extend the online voter registration deadline ignores the fact that eligible Floridians may not have access to a computer to register online if they have been forced to evacuate, lose power from the predicted power outages, or are not eligible to use the OVR system because they do not have a state issued driver license or state ID card.

### B.  An Injunction is Necessary to Avoid Irreparable Harm

The violation of a citizen's right to vote is the quintessential injury justifying an injunction. *See, e.g.*, *Touchston v. McDermott*, 234 F.3d 1133, 1158-59 (11th Cir. 2000) ("[B]y finding an abridgement to the voters' constitutional right to vote, irreparable harm is presumed and no further showing of injury need be made."); *Common Cause/Ga.*, 406 F. Supp. 2d at 1376 ("[T]he right to vote is a fundamental right and is preservative of all other rights.  Denying an individual the right to vote works a serious, irreparable injury upon that individual.").

All of these unfairly disenfranchised prospective applicants will suffer an injury that can never be undone.  Thus, Florida's prospective voter registration applicants have, and will, suffer irreparable harm unless the Court grants the requested relief.

### C.  The Balance of Hardships Weigh in Favor of an Injunction

The balance of hardships clearly weighs in favor of Plaintiffs and in favor of granting the requested relief herein.  The requested relief will not subject the State to any unreasonable hardship under the circumstances if it is required to accept voter registration applications through October 16, 2018.  As Judge Walker explained, when the Court granted similar relief in the wake of Hurricane Matthew in *Fla. Dem. Party*, *supra*:

> This case pits the fundamental right to vote against administrative convenience. Of course, the State of Florida has the ability to set its own deadlines and has an interest in maintaining those deadlines. But it would be nonsensical to prioritize those deadlines over the right to vote, especially given the circumstances here. Other states ravished by Hurricane Matthew extended their registration deadline to protect voters. . . . It is incomprehensible that Florida could not follow suit. *Id.* ECF 15, p. 14.

### D. An Injunction is in the Public Interest

The public interest will be best served by allowing every eligible Floridian to register and cast a vote, thereby preserving this fundamental right and fostering trust in the integrity of the elections. *See Washington Ass'n of Churches*, 492 F. Supp. 2d at 1271; *Wesley*, 408 F.3d at 1355; *Ga. State Conf. of the NAACP v. Fayette Cnty. Bd. of Comm'rs,* 118 F. Supp. 3d 1338, 1348–49 (N.D. Ga. 2015); *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 244 (6th Cir. 2011).

In *New Virginia Majority Education Fund, et al. v Virginia Department of Elections, et al.,* Civil Action No. 1:16-cv-01319, Doc. 10, (E.D. VA. 2016), the Court entered an order granting the Plaintiffs' emergency motion for a preliminary injunction, extending the voter registration deadline from October 17, 2016 until October 21, 2016 in Virginia because of problems with the state's online voter registration system in the final days of voter registration ahead of the 2016 general election.

As Judge Walker aptly put it in his 2016 Order extending Florida's registration deadline due to another hurricane:

> These voters have already had their lives (and, quite possibly, their homes) turned upside down by Hurricane Matthew. They deserve a break, especially one that is mandated by the United States Constitution. Ensuring that they can exercise their constitutional right to vote thus promotes the public interest.

*Fla. Dem. Party*, *supra*, ECF 15, p. 14.

In sum, the present case is another in the long line where a federal court has stood as the last and best bulwark against deprivation of fundamental rights enjoyed by citizens under the Constitution and laws of the United States. Unless the requested relief is granted, thousands of prospective voter registration applicants and voters who need to update their registration data are likely to be disenfranchised solely as a result of a natural disaster that was totally outside of their control to prevent. Such a result would be not only unfair, but a violation of their fundamental right to vote.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting their motion for a preliminary injunction and such further relief as it deems just and proper.

Dated: October 10, 2018

Respectfully submitted,

By:   */s/ Julie A. Ebenstein*
Julie A. Ebenstein (Fla. Bar No. 91033)
jebenstein@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500

Nancy Abudu (Fla. Bar No. 111881)
nabudu@aclufl.org
ACLU Foundation of Florida, Inc.
4343 W. Flagler Street, Suite 400
Miami FL 33134
Tel: 786-363-2700

Ezra D. Rosenberg (*pro hac vice – to be filed*)
Julie Houk (*pro hac vice – to be filed*)
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, D.C. 20005

Telephone:   (202) 662-8600
Facsimile:   (202) 783-0857
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org

Donita Judge (*pro hac vice – to be filed*)
Denise Lieberman (*pro hac vice – to be filed*)
Gilda Daniels (*pro hac vice – to be filed*)
ADVANCEMENT PROJECT
1220 L Street NW, Suite 850
Washington DC 20005
Ph: (202) 728-9557
Fax: (202) 728-9558
djudge@advancementproject.org
dlieberman@advancementproject.org
gdaniels@advancementproject.org

*Counsel for Plaintiffs*